IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LEANA REBECCA DAVIS,          )
                              )
          Plaintiff,          )
                              )
     v.                       )     CIVIL ACTION NO. 2:13-CV-413-CSC
                              )              (WO)
CAROLYN W. COLVIN,            )
ACTING COMMISSIONER OF        )
SOCIAL SECURITY,              )
                              )
          Defendant.          )

**MEMORANDUM OPINION AND ORDER**

**I. Introduction.**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social

Security Act, 42 U.S.C. § 401 et seq. and for supplemental security income benefits under

Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., alleging that she was unable

to work because of a disability. Her application was denied at the initial administrative level.

The plaintiff then requested and received a hearing before an Administrative Law Judge

("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council

rejected a subsequent request for review. The ALJ's decision consequently became the final

decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*,

792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant

---

[1]Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

to 42 U.S.C. §§ 405 (g) and 1383(c)(3).[2]  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and this case remanded to the Commissioner for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

To make this determination[3] the Commissioner employs a five step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

2

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th  Cir. 2004).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).  The court "may not decide the facts anew, reweigh the evidence, or substitute  . . . [its] judgment for that of the [Commissioner]."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (citation and quotation marks omitted).

> [The court must, however,] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

---

[4] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

### III.  The Issues

**A.  Introduction.**  The plaintiff was 42 years old at the time of the ALJ's decision and has a 12th grade education.  The plaintiff's prior work experience includes work as a egg packer, housekeeper and commercial cleaner.  Following the administrative hearing, the ALJ concluded that the plaintiff has the severe impairment of irritable bowel syndrome. (R. at 25) Nonetheless, the ALJ concluded that the plaintiff was not disabled because the plaintiff has the residual functional capacity to perform work as a counter clerk, electronics worker, and remnant worker. (R. at 31)

**B.  The Plaintiff's Claims.**  The plaintiff raises two claims.  The plaintiff claims that the Commissioner's decision should be reversed because as stated by the plaintiff (1) the ALJ failed to account for symptoms of irritable bowel syndrome in her RFC, despite being the sole severe impairment at issue and (2) the ALJ improperly based her credibility finding on an absence of helpful evidence and the plaintiff's performance of minor activities.  These issues are so intertwined that the court will not discuss them separately.

### IV.  Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to his past work.  *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990).  In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability, *e.g.*, the testimony of the claimant and her family or friends; and (4) the claimant's age, education, and work history.  *Tieniber v. Heckler*, 720

F.2d 1251 (11th Cir. 1983).  The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review.  *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981).  The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added).  Within this analytical framework, the court will address the plaintiff's claims.

The plaintiff contends that the ALJ erred because she failed to account for symptoms of irritable bowel syndrome in her residual functional capacity determination.  *See*  See 20 C.F.R. 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware . . . when we assess your residual functional capacity.").  The plaintiff is right.  It is undisputed that the plaintiff has irritable bowel syndrome.  The plaintiff testified that this causes her to experience gastrointestinal pain and diarrhea as much as five to six times daily. (R. at 45-47).  The ALJ thought that the plaintiff's activities of daily living did not support her testimony.

> The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. She is able to care for herself, perform household tasks and go grocery shopping every few days. In addition, given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor.

Yet a review of the record in this case reveals no restrictions recommended by her treating physicians.

(R. at 28)

Generally, an ALJ may consider a person's activities of daily living in making a credibility determination.  20 C.F.R. § 404.1529(c)(3)(i); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1225–26 (11th Cir.2 002) (upholding ALJ's decision to discredit claimant's testimony where it was inconsistent with medical evidence and claimant's daily activities). In this case, however, the generic approach to credibility led the ALJ astray because there is no congruence between work and daily living with regard to limitations imposed by frequent diarrhea.  A person who is caring for herself, performing household tasks or shopping for groceries can take frequent, unplanned breaks whenever she wants to.  However, as the vocational expert testified in this case, that is not true in a work setting.

> Q Can we talk please about how break – how many break periods would be acceptable for the performance of these jobs and what would be considered excessive?
>
> A There are 3 structured breaks during the day, there's the morning and afternoon breaks which are usually 15 minutes each and then a lunch break which is usually 30 minutes. Employers are generally tolerant of a quick break in between each of those breaks of not more than 5 minutes without incidence, I mean, they'll allow a quick five minute break in between each of those, if it goes beyond that then employment becomes in question.
>
> Q And how frequently would the allow for a quick five minute break?
>
> A One in between each of the other breaks, so that would equate to actually four more breaks during the day.
>
> Q And breaks more frequently than that would be excessive and not be

6

allowed?

A Either more frequent or of greater duration.

Q Okay. And that – the response to that question specifically applies to the 3 jobs? Counter clerk, electronic worker and remnant sorter, that you listed previously?

A Yes, Judge.

(R. at 58-59).

Thus, the court is left with the fact that none of the jobs which the ALJ identified as jobs the plaintiff could perform allow for excessive breaks as defined either in terms of frequency or duration.  Indeed, Social Security Ruling 96-8p defines an individual's residual functional capacity as the person's "maximum remaining ability to do sustained work activities in an ordinary work setting on a 'regular and continuing basis'" and that "a 'regular and continuing basis' means eight hours a day, five days a week, or an equivalent work schedule." The ALJ's residual functional capacity description does not incorporate the limitation of the need for frequent and unplanned interruptions in the work schedule.

To further compound the court's difficulty with review of this case, as shown above, the ALJ elicited testimony about the impact of those breaks on the ability of the plaintiff to hold a job, but the ALJ did not discuss this in her opinion.  The ALJ did note the existence of "additional limitations" (R. at 31) but did not describe what they were.  Rather, the ALJ stated that, "[t]o determine the extent to which these limitations erode the unskilled occupational base," she asked the vocational expert about light work jobs which exist in the

national economy. *Id.*  The problem with all this is that it is not at all clear what limitations the vocational expert considered in identifying those jobs.  While, as shown above, the ALJ asked the vocational expert about "break periods," the ALJ did not incorporate any need for frequent, unscheduled breaks in describing the claimant's limitations. Thus, the court has no idea what the ALJ found with regard to the impact of diarrhea on the ability of the plaintiff to work at any job, much less the three the ALJ identified.

The ALJ noted that no doctor had indicated that the plaintiff's "physical impairments would preclude work activit[y]" (R. at 29) as another basis for discrediting the plaintiff.  In most cases, this normative approach to determining credibility is certainly acceptable. However, in this case it is not, because a doctor could say little in the way of work restrictions except "don't get too far from a bathroom."  The absence of physician comments about the plaintiff's physical ability to do work does not support the ALJ's conclusions because the plaintiff's impairment - frequent diarrhea - is a non-exertional impairment unrelated to the strength to do a job.  *See Haynes v. Heckler*, 716 F.2d 483, 485 (8th Cir. 1983) (holding that colon discomfort and recurrent episodes of diarrhea are nonexertional impairments). "The ALJ must make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation and quotation marks omitted).  The ALJ did not make that finding.

The ALJ correctly noted that "limited medical evidence [was] provided in this case."

(R. at 28).  Although the ALJ did not directly say so, it is a fair inference to conclude that the ALJ did not fully credit the plaintiff's testimony about her impairment because of the lack of medical evidence.  However, the Eleventh Circuit has held that, where the record contains evidence that the plaintiff is financially unable to obtain medical care, the ALJ may not draw an adverse inference from the plaintiff's failure to seek medical treatment without first determining whether the claimant is able to afford the medical care.  *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).   In her opinion, the ALJ noted that the plaintiff testified she had been unable to obtain medical treatment because she lacked insurance (R. 27), but the ALJ did not pursue this any further, and there is no indication in the ALJ's opinion about how she considered this question, if at all.  *Cf. Dawkins v. Bowen*, 848 F.2d 1211, 1213-14 (11th Cir. 1988) ("The problem with this case is that it is unclear from the ALJ's opinion whether or not he based his determination that appellant was not entitled to benefits on appellant's failure to follow prescribed medical treatment.").

In short, in this case, the ALJ failed to fully develop the record with regard to the impact of the plaintiff's diarrhea on her ability to perform work and failed to develop the record regarding the plaintiff's financial ability to obtain medical treatment for her condition.  This case will be remanded to the Commissioner for further proceedings consistent with this opinion.

A separate final judgment will be entered.  It is further

**ORDERED** that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273,

9

1278 fn. 2 (11th Cir. 2006), the plaintiff shall have sixty (60) days after she receives notice

of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b).

*See also Blitch v. Astrue*, 261 Fed. Appx. 241, 242 fn.1 (11th Cir. 2008).

     Done this 22nd day of May, 2014.


                /s/Charles S. Coody
               CHARLES S. COODY
               UNITED STATES MAGISTRATE JUDGE